UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Selective Insurance Company of South Carolina, | ) | Civil Action No.:4:21-cv-02841-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Sandra Howell, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the parties' cross motions for judgment on the pleadings.

ECF Nos. 11, 12.  Also pending is Plaintiff Selective Insurance Company of South Carolina's

("Selective") motion to strike, ECF No. 19, and Defendant Sandra Howell's motion for summary

judgment. ECF No. 24.

For the reasons stated below, the Court: 1) grants Selective's motion for judgment on the

pleadings as to the first requested declaration; 2) denies Howell's motion for judgment on the

pleadings as to the first requested declaration and denies without prejudice Howell's motion for

judgment on the pleadings as to the second requested declaration; 3) denies Selective's motion to

strike; and 4) denies Howell's motion for summary judgment as to the first requested declaration and

denies without prejudice Howell's motion for summary judgment as to the second requested

declaration.[1]

This matter is stayed as to Selective's second requested declaration pending the resolution of

*Nationwide Affinity Ins. Co. of America v. Green*, Appellate Case No. 2021-000243, and/or *USAA*

---

[1]     Under Local Civil Rule 7.08 (D.S.C.), "hearings on motions may be ordered by the Court in its
discretion. Unless so ordered, motions may be determined without a hearing."  Upon review of the briefs,
the Court finds that a hearing is not necessary.

*Casualty Ins. Co. v. Rafferty*, Civil Action No.: 2:21-cv-01689-DCN (certified question Appellate Case No. 2021-001390). The parties shall file a status report regarding the *Green* and *Rafferty* cases by January 1, 2023, or within 7 days of an opinion resolving the cases, whichever is earlier.

## Background

This declaratory judgment action arises from an automobile accident and involves stacking of underinsured motorist coverage ("UIM"). Selective seeks two declarations. First, Selective requests a declaration that Defendant Sandra Howell is entitled to a maximum of $50,000.00 ($25,000.00 for each of the two vehicles listed on the Selective policy) in UIM bodily injury coverage under the Selective policy and is not entitled to stack the stated limits of UIM coverage provided by the Selective policy. Complaint, ECF No. 1 at ¶¶ 19-20. Selective contends that Howell is limited by S.C. Code Ann. § 38-77-160 to stacking the amount of UIM coverage on the vehicle involved in the accident, which was insured for $25,000.00 UIM under an Allstate policy. Secondly, Selective requests a declaration that the Selective policy does not provide any split limit stackable UIM property damage coverage for any claims arising out of the injuries and damages sustained by Howell in the automobile accident because she was not operating a "covered auto" at the time of the accident.[2] *Id*. at ¶¶ 23-24.

Selective issued a commercial automobile insurance policy, policy number S1626863 to Sandra Howell's husband, Wesley Howell d/b/a Asphalt Patching Company, with effective dates of August 13, 2019 to August 13, 2020. *Id*. at ¶ 6; Answer, ECF No. 6 at ¶ 7. The Howell Selective Policy listed a 2005 Stirling LT8511 Dump truck and a 2005 Ford F-150 pick-up truck as insured

---

[2]    As suggested in the introductory paragraphs, Selective's second requested declaration is currently being litigated in the South Carolina Supreme Court. Accordingly, it is appropriate to stay this matter as to the second requested declaration until the matters are resolved by the state Supreme Court.

vehicles. Complaint ¶ 6; Answer ¶ 7.  The policy provided liability, uninsured, and underinsured motorist coverage ("UIM") for each vehicle with limits of $1,000,000.00 per occurrence. Complaint ¶ 6; Answer ¶ 7.

On March 5, 2020, Sandra Howell sustained bodily injuries when she was operating a 2006 Toyota that was struck by a 2008 Nissan operated by Tangela Octavia Brockington on US Highway 701 near Conway, South Carolina. Complaint ¶ 9; Answer ¶ 10.  Howell's answer to the complaint notes that she was also struck by a second vehicle after the initial collision with the 2008 Nissan. Answer ¶ 10.

The 2006 Toyota that was driven by Howell and involved in the accident was owned by her husband and insured under a personal auto policy issued to him by Allstate Insurance Company. Complaint ¶ 10; Answer ¶11.  The Allstate policy provided UIM coverage limits of $25,000.00/per person for bodily injury and $25,000.00/per accident for property damage. Complaint ¶ 10; Answer ¶ 11.

Sandra Howell made a claim for UIM coverage under the Selective policy and contends that she is entitled to seek up to the $1,000,000.00 stated limit of coverage. Complaint ¶ 12; Answer ¶ 13.  Selective argues, however, that S.C. Code Ann. § 38-77-160 limits the amount of coverage that can be stacked from a policy covering an "at home" vehicle to the amount of UIM coverage on the vehicle involved in the accident, which in this case would be $25,000.00 for each of Wesley Howell's two vehicles under the Selective policy for a total of $50,000.00. Complaint ¶¶ 11-12. Selective has tendered $50,000.00 to Defendant Sandra Howell under its UIM bodily injury coverage. Complaint ¶ 12; Answer ¶ 13.

The relevant provisions of the Selective policy, which were incorporated into the complaint

and attached to each parties' cross motions for judgment on the pleadings, are as follows:

**SOUTH CAROLINA UNDERINSURED MOTORISTS COVERAGE**

\*\*\*

**A. Coverage**

1. We will pay in accordance with the South Carolina Underinsured Motorists Law all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by an "insured" or "property damage" caused by an "accident". The owner's or driver's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

\*\*\*

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:
1. An individual, then the following are "insureds":
    a. The Named Insured and any "family members".

**C. Exclusions**

This coverage does not apply to any of the following:

\*\*\*

4. "Bodily injury" or "property damage" sustained by:
    a. An individual Named Insured while "occupying" or when struck by any vehicle owned by that Named Insured that is not a covered "auto" for Underinsured Motorists Coverage; or
    b. Any "family member" while "occupying" or when struck by any vehicle owned by that "family member" that is not a covered "auto" for Underinsured Motorists Coverage.

\*\*\*

**D. Limit of Insurance**

1. Regardless of the number of covered "autos", "insureds", premiums

4

paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the limit of Underinsured Motorists Coverage shown in the Schedule....

\*\*\*

**E. Changes in Conditions**

\*\*\*

a. If an "insured" sustains "bodily injury" while "occupying" a vehicle not owned by that person or while not "occupying" any vehicle, the following priorities of coverage apply:

**First Priority** - The policy affording Underinsured Motorists Coverage to the vehicle the "insured" was "occupying" at the time of the "accident".

**Second Priority** - Any policy affording Underinsured Motorists Coverage to a Named Insured or a "family member", if the Named Insured is an individual.

\*\*\*

(2) If there is applicable insurance available under the first priority:

(a) The limit of insurance applicable to the vehicle the "insured" was "occupying", under the policy in the first priority, shall first be exhausted; and

(b) The most we will pay in the second priority shall not exceed the highest limit for any one vehicle under any one policy in the second priority.

\*\*\*

**F. Additional Definitions**

As used in this endorsement:
1. "Family member" means a person related to an Individual Named Insured by blood, marriage or adoption, who is a resident of such Named Insured's household....

5

*\*\**

   3. "Property damage" as used in this endorsement means injury
to or destruction of the Named Insured's covered "auto".
However, "property damage" does not include damage to
property owned by the "insured" while contained in the
Named Insured's covered "auto".

*\*\**

  7 Specifically Described "Autos"  - Only those "autos" described
in Item Three of the Declarations for which a premium charge
is shown (and for Covered Autos Liability Coverage any
"trailers" you don't own while attached to any power
unit described in Item Three).

Selective Insurance Policy, ECF No. 11-1 at 199-202; ECF No. 12-2 at 199-202.

  Both parties have filed cross-motions for judgment on the pleadings. ECF Nos. 11, 12.

Selective has also filed a motion to strike the arguments in Howell's reply brief, ECF No. 18, and

Howell has filed a motion for summary judgment. ECF No. 24.

### Rule 12(c) Standard

  Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings

"[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).

Judgment on the pleadings is appropriate where no set of facts would entitle the nonmovant to

relief." *Church Mut. Ins. Co. v. Lake Pointe Assisted Living, Inc.*, No. 21-1668, 2022 WL 2702427,

at *3 (4th Cir. July 12, 2022) (citing *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir.

2014)).  The court must view the facts presented in the pleadings and the inferences to be drawn

therefrom in the light most favorable to the nonmoving party. *Pennsylvania Nat'l Mut. Cas. Ins. Co.*

*v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019).  While the Court considers the facts in the

light most favorable to the nonmoving party, "[the Court] need not accept the legal conclusions

6

drawn from the facts," and "need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

### Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (2010). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

When no genuine issue of any material fact exists, summary judgment is appropriate. *See Shealy v. Winston*, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. *Id.* However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"Once the moving party has met [its] burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The nonmoving party may not rely on beliefs, conjecture, unsupported speculation, or conclusory allegations to defeat a motion for summary judgment. *See Baber*, 977 F.2d at 875. Rather, the nonmoving party is required to submit evidence of specific facts by way of affidavits, depositions,

interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue

for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## Discussion

The issue before the Court is whether S.C. Code Ann. § 38-77-160 limits Sandra Howell's

ability to stack UIM benefits under the Selective policy to the amount of coverage on the vehicle

involved in the accident, which is $25,000.00.

Section 38-77-160 provides in part:

> Automobile insurance carriers shall offer, at the option of the insured,
> uninsured motorist coverage up to the limits of the insured's liability
> coverage in addition to the mandatory coverage prescribed by Section
> 38-77-150. Such carriers shall also offer, at the option of the insured,
> underinsured motorist coverage up to the limits of the insured liability
> coverage to provide coverage in the event that damages are sustained
> in excess of the liability limits carried by an at-fault insured or
> underinsured motorist or in excess of any damages cap or limitation
> imposed by statute. *If, however, an insured or named insured is*
> *protected by uninsured or underinsured motorist coverage in excess of*
> *the basic limits, the policy shall provide that the insured or named*
> *insured is protected only to the extent of the coverage he has on the*
> *vehicle involved in the accident.*

S.C. Code Ann. § 38-77-160 (emphasis added).

The South Carolina Supreme Court has interpreted § 38-77-160 as setting a **cap** on the

amount which can be stacked from policies on vehicles not involved in the accident. *See South*

*Carolina Farm Bureau Mut. Ins. v. Mooneyham*, 405 S.E.2d 396, 398 (S.C. 1991) ("the amount of

coverage which may be stacked from policies on vehicles not involved in an accident is *limited to*

*an amount no greater than the coverage on the vehicle involved in the accident*" and "[w]e now

hold that when the car involved in the accident has underinsured motorist coverage in excess of the

basic limits, the insured is entitled to stack underinsured motorist coverage from other policies in an

amount equal to the coverage on the car involved in the accident") (emphasis added).

An insured's ability to stack UIM coverage is controlled by statute. S.C. Code Ann. § 38-77-160.  "Stacking is defined as the insured's recovery of damages under more than one policy until all of his damages are satisfied or the limits of all available policies are met." *Giles v. Whitaker*, 376 S.E.2d 278, 279 (S.C. 1989).  "The right to stack is available only to a Class I insured." *Concrete Servs., Inc. v. U.S. Fid. & Guar. Co.*, 498 S.E.2d 865, 866 (S.C. 1998).

Here, the parties agree that Sandra Howell is a Class 1 insured, that the vehicles on the Selective policy were not involved in the accident, that she is entitled to stack the Selective policy, and the Selective policy falls within the "Second Priority" policy language set forth in Section E.(2)(b) above.  The "Second Priority" language provides: "[t]he most we will pay in the second priority shall not exceed the highest limit for any one vehicle under any one policy in the second priority." ECF No. 11-1 at 201; ECF No. 12-2 at 201.

Howell, however, claims that she specifically contracted for UIM coverage up to $1,000,000.00 on the Selective policy.  Howell points to the language in Section E.(2)(b) as support for her position that she contracted for excess UIM coverage arguing the "Second Priority" language should be interpreted as a grant of UIM coverage in excess of the statutory limits set by S.C. Code Ann. § 38-77-160.  To that point, Selective argues that Section E.(2)(b) is not a grant of excess coverage but a **cap** on the total amount of UIM coverage available on the Selective policy under certain circumstances. *See* ECF No. 12-1 at 7.

It is true that "[a]n insured may contract for insurance coverage which is greater than that required by statute." *Putnam v. S.C. Farm Bureau Mut. Ins. Co.*, 476 S.E.2d 902, 902 (S.C. 1996). "To obtain a policy with more coverage, there must be a *specific* agreement and *specific* terms."

*Booth v. Allstate Ins. Co.*, 334 F. Supp. 2d 880, 883 (D.S.C. 2004). The Selective policy in this case contains no language within the UIM coverage specifically noting that the provisions of S.C. Code Ann. § 38-77-160 are being superseded with additional coverage, or that there was a bargained for exchange for coverage of this type. *See Booth*, 334 F. Supp. 2d at 884; *See also* Selective policy, ECF No. 11-1 at 199-202; ECF No. 12-2 199-202.

The Court agrees with Selective.  Section E.(2)(b) is properly interpreted as an anti-stacking provision. *See Nationwide Affinity Ins. Co. of Am. v. Durham,* No. 8:19-CV-01534-DCC, 2021 WL 4227474, at *4 (D.S.C. Feb. 18, 2021).  Anti-stacking provisions are unenforceable *to the extent they would **reduce** coverage **below** the amounts required by South Carolina's insurance statutes. Id.* (citing *Kay v. State Farm Mut. Auto. Ins. Co.*, 562 S.E.2d 676, 678 (S.C. Ct. App. 2002) ("State Farm's provision limiting stacking of UIM coverage to the minimum limits is invalid because it purports to limit the amount of coverage to an amount *less* than that available on the *involved vehicle's* policy") (emphasis added).  That situation is not present in this case.  Selective's anti-stacking provision does not limit the amount of UIM coverage to an amount *less* than the amount of coverage on the vehicle Howell was driving at the time of the collision, nor does it reduce coverage below the amounts required by South Carolina's insurance statutes.  Thus, Selective's anti-stacking provision is not invalid or void.  Selective's anti-stacking provision is not a grant of excess coverage.  Furthermore, Selective's anti-stacking provision (Section E.(2)(b)) does not displace the limits set by S.C. Code Ann. § 38-77-160 and existing case law, which caps the UIM stacking amount to the amount of coverage on the vehicle involved in the accident.

Howell's argument that she should be entitled to stack up to the limits of the Selective UIM coverage is contrary to a long line of South Carolina cases that indicate the "measuring vehicle" for

stacking UIM coverage is the vehicle involved in the accident. As set forth in the pleadings, at the time of the accident, Howell was driving a vehicle insured under an Allstate policy with UIM coverage limits of $25,000.00/per person for bodily injury.

As mentioned above, in *South Carolina Farm Bureau Mut. Ins. v. Mooneyham*, the South Carolina Supreme Court held that § 38-77-160 set a *cap* on the amount which can be stacked from policies on vehicles not involved in the accident. 405 S.E.2d 396, 398 (S.C. 1991) ("the amount of coverage which may be stacked from policies on vehicles not involved in an accident is *limited to an amount no greater than the coverage on the vehicle involved in the accident*" and "[w]e now hold that when the car involved in the accident has underinsured motorist coverage in excess of the basic limits, the insured is entitled to stack underinsured motorist coverage from other policies in an amount equal to the coverage on the car involved in the accident") (emphasis added).

In *Burgess v. Nationwide Mut. Ins. Co.*, a case that involved the "portability" of UIM coverage rather than stacking, the South Carolina Supreme Court aptly noted that "[t]he 'If, however' sentence in § 38–77–160 evinces the legislature's intent, *in a stacking situation*, to bind the insured to the amount of UIM coverage he chose to purchase in the policy covering the vehicle involved in the accident." 644 S.E.2d 40, 42–43 (S.C. 2007) (emphasis added). In this case, the insured chose to purchase $25,000.00 UIM coverage on the Allstate policy covering the vehicle involved in the accident.

In summary, South Carolina law provides that "the amount an insured is permitted to stack from at-home policies is limited to the amount of UIM carried on the vehicle involved in the accident." *Carter v. Standard Fire Ins. Co.*, 753 S.E.2d 515, 519 (S.C. 2013) (citing *Mooneyham*, 405 S.E.2d at 398); *State Farm Mut. Auto. Ins. Co. v. Gunning*, 532 S.E.2d 16, 18 (S.C. Ct. App.

11

2000) (stating "the clear language of section 38–77–160 applies to limit the extent of excess UIM coverage available *in each circumstance where an insured seeks recovery of UIM benefits from a policy covering a non-involved vehicle.* It clearly states that where an insured has UIM coverage in excess of the basic limits, the insured is limited to the amount of coverage on the vehicle involved in the accident") (emphasis added). Howell's arguments to the contrary are unpersuasive.[3] Howell has failed to point to language within the Selective policy specifically noting that the provisions of S.C. Code Ann. § 38-77-160 are being superseded with additional coverage, or that there was a bargained for exchange for coverage up to the limits of the UIM coverage on the Selective policy. *See Booth*, 334 F. Supp. 2d at 884. The Selective policy lacks a specific agreement or specific terms providing excess UIM coverage beyond the UIM coverage on the vehicle involved in the accident. In the absence of a specific agreement or specific terms superseding § 38-77-160 or providing excess UIM coverage above and beyond the UIM coverage on the vehicle involved in the accident, Howell can prove no set of facts that would entitle her to relief as to Selective's first requested declaration. To the contrary, Selective has established that it is entitled to judgment on the pleadings as to its first requested declaration. Accordingly, Howell, as a Class 1 insured, is entitled to stack UIM bodily injury coverage under the Selective policy up to $25,000.00 for each of the two vehicles under the Selective policy for a total of $50,000.00.

### Conclusion

For the reasons stated above, the Court: 1) grants Selective's motion for judgment on the

---

[3]    Filed with her motion for summary judgment, Howell attached memos filed by Selective's counsel in other cases that involved different parties, different insurance policies, and different insurance companies. Those matters are not before the Court and Plaintiff's counsel's briefs in those other cases do not impact this Court's analysis of the Selective policy or the impact of S.C. Code Ann. § 38-77-160.

12

pleadings as to the first requested declaration; 2) denies Howell's motion for judgment on the pleadings as to the first requested declaration and denies without prejudice Howell's motion for judgment on the pleadings as to the second requested declaration; 3) denies Selective's motion to strike; and 4) denies Howell's motion for summary judgment as to the first requested declaration and denies without prejudice Howell's motion for summary judgment as to the second requested declaration.

This matter is stayed as to Selective's second requested declaration pending the resolution of *Nationwide Affinity Ins. Co. of America v. Green*, Appellate Case No. 2021-000243, and/or *USAA Casualty Ins. Co. v. Rafferty*, Civil Action No.: 2:21-cv-01689-DCN (certified question Appellate Case No. 2021-001390.  The parties shall file a status report regarding the *Green* and *Rafferty* cases by January 1, 2023, or within 7 days of an opinion resolving the cases, whichever is earlier.

**IT IS SO ORDERED.**

September 26, 2022                              s/ R. Bryan Harwell
Florence, South Carolina                       R. Bryan Harwell
                                               Chief United States District Judge

13